IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL No.: RDB 11-0641 |
| BRANDON SYKES | * | |
| Defendant. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Defendant Brandon Sykes ("Defendant" or "Mr. Sykes") was charged in a three-count indictment with conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 ("Count I"); (2) conspiracy to possess, brandish, and discharge a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(o) ("Count II"); and (3) possession, brandishing, and discharging a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) and aiding and abetting that offense in violation of 18 U.S.C. § 2 ("Count III").  On December 7, 2012, following a week-long trial, a federal jury convicted Mr. Sykes of Counts I and II.  As to the conviction on Count II, the jury found Mr. Sykes guilty of conspiracy only to possess and brandish a firearm in furtherance of a drug-trafficking crime.  The jury found Mr. Sykes not guilty of Count III.  Presently pending before this Court are the post-verdict Motions for New Trial and Renewed Motions for Judgment of Acquittal filed by counsel for the

Defendant (ECF No. 157) and by Mr. Sykes himself (ECF No. 160).[1]  These Motions were timely filed on December 13, 2012, and December 20, 2012, respectively.  Mr. Sykes argues that the Government presented insufficient evidence at trial to sustain a conviction.  The Government has filed a Response opposing these Motions (ECF No. 161).  The parties' submissions have been reviewed and no hearing is necessary to decide these matters.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the Motions for New Trial and Renewed Motions for Judgment of Acquittal (ECF Nos. 157, 160) are DENIED.

BACKGROUND

Taken in the light most favorable to the Government, *see Evans v. United States*, 504 U.S. 255, 257 (1992) (citing *Glasser v. United States*, 315 U.S. 60, 80 (1942)), the following facts were established at trial.  The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") devised an operation to arrest individuals committing a specific type of home invasion in which drug dealers steal from the stash house of other drug dealers.  This operation, which the ATF refers to as a "reverse sting operation," involved an undercover ATF Agent, Special Agent Richard Zayas ("Agent Zayas"), who held himself out to be a disgruntled courier for a Mexican drug cartel operating in Baltimore.[2]  The operation also involved two confidential informants.

---

[1] These Motions assert essentially the same argument—that because there was insufficient evidence to sustain a conviction, a judgment of acquittal should be entered or, in the alternative, this Court should order a new trial on Counts I and II.  These Motions will be addressed jointly.

[2] This Court notes that the United States Court of Appeals for the Fourth Circuit recently addressed a factually similar case, *United States v. Min*, Nos. 11-4702, 11-4703, 11-4704, 11-4758, 11-4795, 11-4796 (4th Cir. Dec. 31, 2012), wherein the Court held that factual impossibility was no defense to conspiracy charges arising out of an ATF "stash house sting" operation.

As part of this reverse sting operation, Agent Zayas represented that he intended to commit robbery of the stash house of the Mexican drug cartel and was looking for assistance in executing that robbery. In early November 2011, one of the informants involved in the operation met with a co-defendant, Dawron Mason ("Mr. Mason"), to discuss this potential home invasion, and Mr. Mason agreed to participate.[3] Mr. Mason told the informant that he had several firearms and experience in home invasions.

Mr. Mason thereafter met with Agent Zayas on three occasions. At the first of these meetings, on November 8, 2011, Agent Zayas told Mr. Mason that on November 14 he would be picking up two kilograms of cocaine from the Mexican drug cartel's stash house. Agent Zayas explained that in past collections there were usually eight to ten additional kilograms of cocaine in the stash house, as well as two individuals, one of whom was armed, protecting the drugs. After hearing these conditions, Mr. Mason remarked that he could handle this sort of home invasion. Then Mr. Mason and Agent Zayas agreed to split the proceeds of the home invasion evenly, and Mr. Mason discussed his plan to commit the robbery of the stash house with his "associates."

Agent Zayas and Mr. Mason, along with a co-defendant, Michael Smith, met again on November 10, 2011. At this meeting, Mr. Mason indicated that he would arrange to have transportation for the home invasion; that approximately five people, including himself, would assist in carrying out the robbery; and that all of them would be "packing." The parties then confirmed that they would meet at 1 p.m. on November 14, 2011, to execute the home invasion.

---

[3] Most of the meetings and telephone calls between Mr. Mason and members of the ATF's reverse sting operation were recorded by audio or video.

On November 14, the day of the planned home invasion, Mr. Mason was running late. He called one of the informants at 1:37 p.m. and reassured him and Agent Zayas that he was on his way. During this call, Mr. Mason and Agent Zayas arranged to meet at a car wash before executing the home invasion. At 2:44 p.m., Mr. Mason spoke with Agent Zayas and said that he was in the midst of picking up his associates. At 3:21 p.m., the Defendant in this case, Mr. Sykes, entered the vehicle that Mr. Mason was driving. A few minutes later, Mr. Mason called Agent Zayas to tell him that Mr. Mason and his associates were ready to meet.

They met Agent Zayas at the specified car wash at 3:44 p.m. When Mr. Mason exited the vehicle, Agent Zayas opened the rear driver's side door of the vehicle and positioned himself so that he could speak to the six passengers, Mr. Sykes, the co-defendant Michael Smith, three other co-defendants, and a juvenile male. Then Agent Zayas recited the details pertaining to the planned home invasion that he had previously communicated to Mr. Mason. Specifically, Agent Zayas stated that when he entered the stash house he would be picking up two kilograms of cocaine, but that there would be an additional eight to ten kilograms of cocaine in the house and guarded by two individuals, one of whom would be armed. At this point, a co-defendant, Douglas McArthur Thomas, asked, "They only two in there?", and Agent Zayas responded in the affirmative. Then Agent Zayas stated that the cocaine would be marked, which would mean that Mr. Mason and his associates would have to remove the packaging before resale of the drugs. After stating these details, Agent Zayas asked, "Are we straight? Is that cool?" Neither the Defendant, Mr. Sykes, nor any of the other passengers responded or attempted to exit the vehicle. Agent Zayas then stated that

the proceeds of the robbery would be split evenly and asked again, "Is that cool?" None of the passengers responded or attempted to leave. Finally, Agent Zayas asked the passengers if they would be "hitting" the stash house as he was entering or exiting, and co-defendant Smith answered that they intended to enter the house as Agent Zayas was exiting. Agent Zayas again posed the question, "Is that cool, we straight?", and none of the passengers responded or attempted to leave. Despite the amount of information conveyed in this conversation, it lasted approximately ninety seconds.

Agent Zayas then told Mr. Mason to follow him to a storage facility just down the road where Agent Zayas planned to store his share of the stolen cocaine. Agent Zayas and Mr. Mason, with the six passengers in tow, drove to the storage facility. Unbeknownst to Mr. Mason, an ATF special response team ("SRT") was located at the storage facility, and when they arrived, the SRT confronted Mr. Mason and the vehicle's passengers. Mr. Mason, Mr. Sykes, and the other passengers attempted to flee, and gunfire was exchanged during their flight. All individuals in the vehicle were eventually apprehended. During a search of Mr. Mason's vehicle and the surrounding scene, police recovered three loaded handguns. Two spent shell casings were located inside one of the handguns.

Also presented at trial was evidence that Mr. Sykes, every Monday through Thursday for the past three weeks, had been using public transportation to arrive home by 4 p.m. On November, 14, 2011, which was a Monday, Mr. Sykes's fiancé expected Mr. Sykes to be home by 4 p.m. Mr. Sykes and his fiancé spoke on the phone around 3:15 p.m., and Mr. Sykes explained that he was getting a ride home with a friend.

At the conclusion of the Government's case on December 6, 2012, the Defendant moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.  This Court denied that motion.  The Defendant renewed his motion for a judgment of acquittal at the close of all of the evidence, and that motion was also denied. Now Mr. Sykes presses a similar argument, asserting that because there was insufficient evidence to sustain his convictions on Counts I and II, this Court should either grant his Motion for Judgment of Acquittal or, in the alternative, order a new trial on Counts I and II.

<u>STANDARD OF REVIEW</u>

**A.  Motion for Judgment of Acquittal**

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, a court must enter a judgment of acquittal of any offense "for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  A jury verdict must be sustained, however, if there is substantial evidence to support it, viewing the facts in a light most favorable to the Government.  *Evans v. United States*, 504 U.S. at 257 (citing *Glasser v. United States*, 315 U.S. at 80).  The United States Court of Appeals for the Fourth Circuit has "defined 'substantial evidence' as 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'"  *United States v. Smith*, 451 F.3d 209, 216 (4th Cir.), *cert. denied*, 127 S. Ct. 197 (2006) (citation omitted).  In determining whether there is substantial evidence, this Court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established."  *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

This Court "can reverse a conviction on insufficiency grounds only when the 'prosecution's failure is clear.'" *United States v. Moye*, 454 F.3d 390, 394 (4th Cir.), *cert. denied*, 549 U.S. 983 (2006) (citation omitted).  Indeed, if "any rational trier of fact could have found the elements of the crime beyond a reasonable doubt," the conviction must be sustained. *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Where the evidence presented at trial could support "different, reasonable interpretations, the jury decides which interpretation to believe." *Id.* (quoting *United States v. Garcia*, 868 F.2d 114, 116 (4th Cir.), *cert denied*, 490 U.S. 1094 (1989)).

## B.  Motion for New Trial

Rule 33 of the Federal Rules of Criminal Procedure states that a district court may vacate a judgment and grant a new trial upon the motion of a defendant "if the interest of justice so requires." Fed. R. Crim. P. 33(a).  A new trial is a drastic remedy, intended for a rare case.  The Court of Appeals for the Fourth Circuit has cautioned that a district court should exercise its discretion in this area "sparingly" and that it should grant a new trial "only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (quoting *United States v. Wilson*, 118 F.3d 228, 237 (4th Cir. 1997)).  A new trial should be granted only if "it would be a miscarriage of justice to let the verdict stand." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997); *see also United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985).

DISCUSSION

**I.      Defendant Sykes's Motions for Judgment of Acquittal**

Defendant Brandon Sykes ("Defendant" or "Mr. Sykes") argues that there was insufficient evidence presented at trial to have his case submitted to a jury.  Specifically, Mr. Sykes emphasizes that the Government presented no evidence that Mr. Mason or the other co-conspirators told Mr. Sykes about their plan to execute the home invasion.  Additionally, Mr. Sykes points out that no evidence shows that he was aware of the firearms in Mr. Mason's vehicle.  At bottom, Mr. Sykes argues that the only evidence the jury could have relied on in determining that he had joined the conspiracies was his mere presence in the vehicle.  Mr. Sykes reminds this Court, as it instructed the jury after closing arguments, that "mere presence at the scene of the alleged crime does not, by itself, make [a defendant] a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member." *See* Court's Jury Instruction No. 30 (quoting L. Sand, J. Siffert, W. Loughlin, S. Reiss & N. Batterman, Modern Federal Jury Instructions—Criminal, § 19.01, 19-6).

To prove the conspiracy charges in this case, the Government had to establish that there was an agreement to commit the crimes—that is, to possess with the intent to distribute five kilograms or more of cocaine and to possess and brandish a firearm in furtherance of that crime.  *See, e.g.*, *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir.), *cert. denied*, 519 U.S. 1151 (1997).  In addition, the Government had to prove that Mr. Sykes knew of that agreement and knowingly and voluntarily joined that agreement.  *See, e.g.*, *id*.  Mr. Sykes fails to show that there was a lack of substantial evidence to support both convictions,

8

viewing the facts in a light most favorable to the Government. *Evans v. United States*, 504 U.S. at 257. At trial, the Government presented evidence not just of Mr. Sykes's mere presence in Mr. Mason's vehicle. Rather, the Government showed that Mr. Mason picked up Mr. Sykes while Mr. Mason and his co-conspirators were assembling to execute the home invasion and that Mr. Sykes remained in the car when Mr. Mason and Agent Zayas met at the car wash. Perhaps most importantly, the Government established that after Agent Zayas stated to all of the passengers in the vehicle, including Mr. Sykes, the details of the imminent home invasion and repeatedly asked if they were "cool" with this plan, Mr. Sykes did not leave the vehicle or make any representations to suggest that he was not involved in the home invasion but was simply catching a ride home. The Government also argued that while the Defense had put on substantial evidence of Mr. Sykes's consistent arrival at home by 4 p.m. in the weeks leading up to November 14, 2011, that evidence was not persuasive because Mr. Sykes's conduct on the date of the planned home invasion was an aberration. Instead of using public transportation, as Mr. Sykes had routinely done, he told his fiancé that he was catching a ride home with a friend and entered Mr. Mason's vehicle. Mr. Sykes's breaking with his weekly routine, the Government argued, was evidence that on November 14, 2011, he did not intend to go directly home but decided to involve himself in the conspiracies with which he was charged.

The Government's evidence at trial was not direct. Rather, to come to the conclusion that Mr. Sykes had knowledge of the conspiracies and became a voluntary participant in them, the jury had to make inferences based on the circumstantial evidence presented to it. "It is elementary that a criminal conspiracy, as an inchoate offense, may be

proven inferentially and by circumstantial evidence." *United States v. Godwin*, 272 F.3d 659, 668 (4th Cir. 2001). Indeed, a conspiracy may be "proved wholly by circumstantial evidence." *Burgos*, 94 F.3d at 858. In *United States v. Burgos*, the Court of Appeals for the Fourth Circuit explained that because a conspiracy is by its very nature "clandestine and covert," it frequently results "in very little direct evidence of [the agreement to affectuate a criminal act]" and thus is generally proved by circumstantial evidence. *Id.* at 857.

Considering the amount of circumstantial evidence against Mr. Sykes, and allowing the Government "the benefit of all reasonable inferences from the facts proven to those sought to be established," *United States v. Tresvant*, 677 F.2d at 1021, this Court finds that the Government presented sufficient evidence for some "rational trier of fact," *Murphy*, 35 F.3d at 148, to determine Mr. Sykes's guilt beyond a reasonable doubt. While Mr. Sykes presses at this stage, as he did in his earlier Rule 29 motions, that mere presence is insufficient to convict him of conspiracy, the Government proved more than mere presence. Indeed, the Government proved that Mr. Sykes found himself in a car surrounded by conspirators, that he was informed by at least Agent Zayas of the details of the imminent home invasion, and that when given the opportunity to express his lack of commitment to the robbery or to leave the vehicle, he quietly stayed put. To be sure, this evidence could reasonably support different interpretations regarding whether Mr. Sykes was involved in this conspiracy. Nevertheless, where "the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe." *Id.* Moreover, the jury may have viewed the continued presence of Mr. Sykes in Mr. Mason's vehicle—when the other passengers in the

vehicle were assembled to execute a home invasion and Agent Zayas was reciting the details of the planned robbery—as more than mere presence.  *Cf. Burgos*, 94 F.3d at 869.

Where the prosecution's failure is not "clear," *United States v. Moye*, 454 F.3d at 394, this Court cannot reverse Mr. Sykes's convictions.  In this case, the Government fulfilled its duty to present evidence sufficient to support findings, beyond a reasonable doubt, that Mr. Sykes knew of and voluntarily participated in a conspiracy to possess with the intent to distribute cocaine as well as a conspiracy to possess and brandish firearms in furtherance of that drug offense.  Mr. Sykes's arguments are simply a rehashing of the defenses he presented at trial to a jury whose members, in the end, remained unmoved.  Where the evidence could have reasonably support different interpretations, it was the jury's role to decide upon an interpretation, and this Court will not disturb its decision.  For these reasons, the Motions for Judgment of Acquittal (ECF Nos. 157, 160) are DENIED.

## II.    Defendant Sykes's Motions for New Trial

Based on the same argument that there was insufficient evidence to support the convictions on Counts I and II, Mr. Sykes moves this Court to order a new trial.  Rule 33 of the Federal Rules of Criminal Procedure permits a court to vacate a judgment and grant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The Court of Appeals for the Fourth Circuit has instructed that a court should grant a new trial "only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d at 320. Thus, a Rule 33 motion should be granted only sparingly.  *Id.*

Mr. Sykes fails to provide any basis for granting a new trial.  He only repeats the defenses he asserted at trial—that the Government has not established with sufficient

evidence his guilt beyond a reasonable doubt.  As this Court explains in Part I of this Memorandum Opinion, it is without dispute that some "rational trier of fact could have found the elements of the [crimes] beyond a reasonable doubt."  *United States v. Murphy*, 35 F.3d at 148.  The evidence in this case did not weigh heavily against the verdict.  Thus, without some newly discovered evidence or other reason warranting a new trial, this Court is unwilling to vacate the judgment of the jury in this case.  Accordingly, Mr. Sykes's Motions for New Trial (ECF Nos. 157, 160) are DENIED.

<u>CONCLUSION</u>

For the reasons stated above, the Motions for New Trial and Renewed Motions for Judgment of Acquittal, filed by counsel for the Defendant (ECF No. 157) as well as by Mr. Sykes himself (ECF No. 160), are DENIED.  A separate Order follows.


Dated:        January 11, 2013              _____/s/_____

                                            Richard D. Bennett
                                            United States District Judge